**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CLARA SHEPHERD WARRICK** and | ) | |
| **JIMMY LEE WEARY**, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 13 C 8326 |
| | ) | |
| **WILLIAM ROBERTS, II**, **ANDRE YOUNG**, | ) | |
| **SHAWN CARTER**, **JACOB DUTTON**, | ) | |
| **UNIVERSAL MUSIC GROUP, INC.**, | ) | |
| **UNIVERSAL MUSIC PUBLISHING GROUP**, | ) | |
| **ISLAND DEF JAM MUSIC GROUP**, **UMG** | ) | |
| **RECORDINGS, INC.** and **SONGS OF** | ) | |
| **UNIVERSAL, INC.**, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Clara Shepherd Warrick ("Shepherd") and Jimmy Lee Weary ("Weary") have brought

this action against William Roberts II ("Rick Ross"), Andre Young ("Dr. Dre"), Shawn Carter

("Jay Z"),[1] Jacob Dutton and UMG Recordings, Inc. and Song of Universal, Inc. (together

"Universal," treated for convenience as a singular noun), as well as several other individuals and

business entities, charging both copyright infringement and related state law violations.  Those

claims concern the use of Shepherd's and Weary's song <u>I'm So Grateful (Keep in Touch)</u>

("<u>Grateful</u>") as part of a sound record titled <u>3 Kings</u> that features rap music performed by Jay Z,

Dr. Dre, and Rick Ross.

---

[1]  Although he is represented by counsel in these proceedings, Jay Z claims to be no
stranger to the legal process, having earlier declared:  "Well, I ain't passed the bar, but I know a
little bit" (see Jay Z, <u>99 Problems</u>, on <u>The Black Album</u> (Roc-A-Fella Records 2003)).

Dr. Dre, Jay Z and Universal have moved to dismiss the Complaint here pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6). Under the facts alleged in the Complaint (considered together with documents referred to in the Complaint), Universal was clearly a co-owner of the copyright in <u>Grateful</u> and therefore cannot be sued for infringement. That inescapable fact disposes of the Complaint's infringement claim -- the sole federal claim presented by Shepherd and Weary -- and this Court declines to exercise supplemental jurisdiction over their state law claims. Accordingly Universal's motion is granted, and both the Complaint and this action are dismissed without prejudice to the reassertion of the state law claims in an appropriate state tribunal.

**Standard of Review**

Under Rule 12(b)(6) a party may move for dismissal of a complaint for its "failure to state a claim upon which relief can be granted." Although familiar Rule 12(b)(6) principles require a district court to accept all of a plaintiff's well-pleaded factual allegations as true, and to draw all reasonable inferences from those allegations in plaintiff's favor (<u>Christensen v. County of Boone</u>, 483 F.3d 454, 457 (7th Cir. 2007) (per curiam)), it is equally true that "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth" (<u>McCauley v. City of Chicago</u>, 671 F.3d 611, 616 (7th Cir. 2011)).

In recent years the Supreme Court has made an important change in the evaluation of Rule 12(b)(6) motions in what this Court regularly refers to as "the <u>Twombly</u>-<u>Iqbal</u> canon" (a usage drawn from <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 562-63 (2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)) -- and <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007) (per curiam) has also provided further Supreme Court enlightenment on the issue. That canon has introduced a notion of "plausibility" into the analysis, and in that respect our Court of Appeals has "interpreted <u>Twombly</u> and <u>Iqbal</u> to require the plaintiff to provid[e] some specific facts to

support the legal claims asserted in the complaint" (<u>McCauley</u>, 671 F.3d at 616 (internal quotation marks omitted but brackets in original)).  As <u>McCauley, id.</u> (internal quotation marks again omitted) went on to reconfirm, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together."

**Facts**[2]

Shepherd and Weary are successful gospel music artists who have been involved in gospel music for decades (S.-W. Mem. 1).  In 1976 they created <u>Grateful</u>, with Shepherd authoring the lyrics and Weary composing the music (¶ 19), and the song was first distributed by their gospel singing group Crowns of Glory (¶ 22).  Shepherd and Weary insist that <u>Grateful</u> was meant to be performed "only as spiritually uplifting gospel music" (¶ 2), and it apparently was so employed until July 2012.

<u>Grateful</u> received radically different treatment with the release of an album titled <u>God Forgives – I Don't</u> on July 31, 2012.[3]  That album included the song <u>3 Kings</u>, produced by Jacob Dutton and featuring performances by Rick Ross, Dr. Dre and Jay Z (¶ 25).  <u>3 Kings</u> "sampled" <u>Grateful</u> by including substantial elements of that work as background music over which defendants performed their rap lyrics (¶ 26) -- lyrics that included language that Shepherd and Weary deem "unsavory" and object to strongly, such as "[i]f the b**ch bad I got her in red bottoms," "[c]ome and suck a d**ck for a millionaire" and "spray these nig* as baby just like

---

[2]  Citations to the Complaint simply take the form "¶ --," while Universal's and the other defendants' memorandum in support of their motion to dismiss will be cited "U. Mem. --," Shepherd's and Weary's memorandum in opposition will be cited "S.-W. Mem. --" and defendants' reply memorandum will be cited "U. Reply Mem. --."  Citations to exhibits attached to those submissions will add the suffix "Ex. --" to the corresponding document.

[3]  <u>God Forgives</u> was ultimately nominated for a GRAMMY award (¶ 41).

- 3 -

daddy taught ya" (¶ 2). 3 Kings was released with an accompanying video that depicts drug use,

nudity, gun violence, criminal conduct and other items that "are certainly inconsistent with

Plaintiffs' wishes for how Plaintiffs' Song would be portrayed" (¶ 34).

Upon learning of the use of Grateful in 3 Kings, Shepherd and Weary notified Rick Ross,

Dr. Dre, Jacob Dutton and Jay Z that they believed 3 Kings infringed Grateful (¶¶ 45-47). Those

defendants, along with Universal, sought to justify their use of Grateful by arguing that Universal

holds the sole copyright in that work and had licensed their activities (¶ 48). To that end

Universal pointed to two relevant agreements, one executed by Shepherd and the other assertedly

executed by Weary. First of those documents is an Exclusive Songwriter's and Composer's

Agreement ("1974 Agreement") executed by Shepherd in 1974. 1974 Agreement ¶ 3 transfers

broad rights in any musical composition created during the life of the 1974 Agreement to

Universal's predecessor-in-interest, ABC/Dunhill Music, Inc. ("ABC/Dunhill"):

> Writer hereby irrevocably and absolutely assigns, transfers, sets over and grants to
> Publisher, its successors and assigns, each and every and all rights and interests of
> every kind, nature and description in and to the results of and proceeds of Writer's
> services hereunder, including, but not limited to, the titles, words and music of
> any and all original musical compositions . . . together with all worldwide
> copyrights and renewals and extensions thereof, which musical works have been
> written[4] composed, created or conceived, in whole or in part, by Writer alone or
> in collaboration with another or others . . . . Writer acknowledges that included
> within the rights and interests hereinabove referred to, but without limiting the
> generality of the foregoing, is Writer's irrevocable grant to Publisher, its
> successors, licensees, sub-licensees and assigns, of the sole and exclusive
> right . . . :
>
> > (a) To perform said musical compositions publicly for profit by
> > means of public and private performance, radio broadcasting, television,

---

[4] [Footnote by this Court] It is obvious that another comma was omitted at this point in
the document -- without one it's simply bad English.

- 4 -

or any and all other means, whether now known or which may hereafter come into existence.

(b)  To substitute a new title or titles for said compositions and to make any arrangement, adaptation, translation, dramatization and transposition of said compositions, in whole or in part . . . .

(c)  To secure copyright registration and protection of compositions in Publisher's name . . . and to have and to hold said copyrights, renewals, extensions and all rights of whatsoever nature thereunder existing, for and during the full term of all said copyrights . . . .

(d)  To make or cause to be made, master records . . . or other reproductions of said compositions, in whole or in part, in such form or manner and as frequently as Publisher's sole and uncontrolled discretion shall determine, including the right to synchronize the same with sound motion pictures and the right to manufacture, advertise, license or sell such reproductions for any and all purposes, including . . . broadcasting, television, sound motion pictures, wired radio and any and all other means or devices whether now known or which may hereafter come into existence.

*        *        *

(f)  Any and all other rights of every and any nature, now or hereafter existing under and by virtue of any common law rights, and any copyrights and renewals and extensions thereof, in any and all such compositions." [5]

---

[5] [Footnote by this Court]  Clearly no substantive significance should be attached to the fact that the 1974 Agreement employed the word "Writer" to denote the creative person or persons who was or were granting the broad rights conveyed by the just-quoted language, or, for that matter, the fact that the 1976 Agreement employed the word "Composer" to denote the creative person or persons granting the corresponding rights.  After all, the generic term "songwriter" is used in common parlance to mean the person or persons (both lyricists and composers) producing singable works.  And the facts that the services provided by the "Writer" in the 1974 Agreement include "the titles, words and music" of musical compositions and that it is specifically contemplated that the "Writer" would have "written, composed, created or conceived, in whole or in part, . . . alone or in collaboration with another or others" some musical work or works plainly encompasses either a lyricist or a composer or both when, as here, they are the joint producers of such work or works -- a "Writer" writes words (lyrics) or music or perhaps (as with Noel Coward) both, and under the Agreement is empowered to grant the right (among others) "to perform said musical compositions." That is precisely what Shepherd did in the 1974 "Exclusive Songwriter's and Composer's Agreement."

In return for that broad grant of rights, Shepherd was to receive compensation and royalties as set out in 1974 Agreement ¶ 7.

That 1974 Agreement was initially limited to a term of one year, so that it would have applied only to works composed between March 1, 1974 and March 1, 1975 (id. ¶¶ 2). But the 1974 Agreement also included a provision granting ABC/Dunhill four consecutive irrevocable options to renew the Agreement for successive one-year periods (id. ¶ 18). Those options could be exercised by giving notice 30 days before a scheduled expiration of the 1974 Agreement -- that notice requirement itself being satisfied by depositing a properly addressed writing in the United States mail (id. ¶ 13). Universal has tendered copies of the renewal notices that it sent to Shepherd, together with certified mail receipts for the 1975-76 renewal notice (dated January 24, 1975) and the 1976-77 notice (dated January 12, 1976) (U. Mem. Ex. F) -- though Shepherd's responsive memorandum asserts that she never received those renewal notices (S.-W. Mem. 17).

As for the second agreement -- a 1976 Agreement purporting to transfer Weary's rights in Grateful to ABC/Dunhill -- its precise terms need not be discussed for a simple reason: Weary asserts that his signature on that document was forged.[6] That 1976 Agreement was signed under the name "James Weary," but Weary alleges that he has never signed his name as "James" and that his legal name as it appears on his birth certificate is "Jimmy Lee Weary" (¶ 48). In 1976 ABC/Dunhill registered Grateful with the United States Copyright Office, listing Clara Shepherd and "James Weary" as authors and itself as copyright claimant (¶ 20; U. Mem. Ex. H).

---

[6] Weary and Shepherd do not dispute the authenticity of Shepherd's signature on the 1974 Agreement.

After the release of 3 Kings, Shepherd and Weary twice warned Rick Ross, Dr. Dre, Jacob Dutton and Jay Z that they believed 3 Kings infringed their copyright in Grateful (¶¶ 45-47). When those defendants and Universal disagreed, Shepherd and Weary sued, advancing copyright infringement and a variety of state law claims in Case No. 13 C 987. This Court granted Universal's motion to dismiss the Complaint there on the ground that plaintiffs -- by failing to have registered an independent copyright in Grateful -- had not satisfied the procedural requirements of 17 U.S.C. § 411(a)[7] (see the "Order" in that earlier case, 2013 WL 3754918 (N.D. Ill. July 15, 2013)). In June 2013 Shepherd and Weary filed a Supplemental Copyright Registration for Grateful with the Copyright Office and filed the Complaint in this Case No. 13 C 8326 to reflect that (¶ 20). Universal, Jay Z and Dr. Dre now bring the present motion to dismiss the Complaint here.

### Shepherd's and Weary's Complaint Is Not Barred by Res Judicata

Before turning to the meat of defendants' motion, this opinion must address their attempt to nip the controversy in the bud by invoking the doctrine of res judicata.[8] Universal and its co-defendants argue that this Court's Order dismissing Shepherd's and Weary's earlier Complaint in Case No. 13 C 987 for their failure to have complied with the copyright registration requirement of Section 411(a) triggers that doctrine. But the issue that this Court actually decided in that earlier case was simply that copyright registration was a prerequisite to an infringement suit and that Shepherd and Weary had failed to satisfy that prerequisite. That

_____

[7] All further references to Title 17's provisions will simply take the form "Section --," omitting the prefatory "17 U.S.C. §."

[8] As always, this Court prefers -- and will employ -- the more precise term "claim preclusion." "Res judicata" has the potential for confusing any analytical exposition because it is often also used to denote issue preclusion.

judgment would indeed have had claim preclusive effect if Shepherd and Weary had refiled the case without first registering their copyright -- but it simply has no bearing on the present case, in which Shepherd and Weary have now filed a supplemental copyright registration and properly plead that fact.

If any doubt remained that claim preclusion does not apply here, even a cursory reading of the Order would immediately put that doubt to rest. That document warns plaintiffs' counsel of traps to avoid "in connection with any future effort . . . to refile this action" and states that "counsel are expected to attach those agreements . . . as exhibits to any new complaint" (2013 WL 3764198 at *2). This Court is of course well aware of the principles of claim preclusion, and if its earlier judgment had been so broad as to bar future actions by Weary and Shepherd -- that is, once they had cured the deficiency noted in the Opinion -- it would not have specified which documents counsel should attach to a new complaint. Having dispensed with defendants' procedural objection, then, this opinion turns to the merits of Shepherd's and Weary's current Complaint.

### Universal Is a Co-Owner of the Copyright in <u>Grateful</u>

Universal argues that it cannot be liable for infringement because it was assertedly the sole holder of the copyright to <u>Grateful</u> and it licensed that work's use in <u>3 Kings</u>. Universal bases that assertion on the 1974 Agreement signed by Shepherd and the 1976 Agreement bearing the signature "James Weary."

That argument is simply untenable in the present procedural posture. Weary alleges that his purported signature on the 1976 Agreement was forged, and he has pleaded sufficient factual specifics -- notably his assertion that his legal name is "Jimmy Lee Weary" and that he has never

signed his name as "James Weary" -- to compel this Court to treat that allegation as gospel[9] for

purposes of this motion. For Rule 12(6)(b) purposes, then, Universal cannot rely on any asserted

transfer of rights by Weary in establishing its ownership of Grateful.

But Universal has a powerful fallback argument: It contends that it was at least a

co-owner of the copyright in Grateful because of Shepherd's transfer of her rights to

ABC/Dunhill. [10] That fact is ultimately dispositive. As Oddo v. Ries, 743 F.3d 630, 632-33 (9th

Cir. 1984) (copious internal citations omitted) confirms:

> A co-owner of a copyright cannot be liable to another co-owner for infringement
> of the copyright. Rather, each co-owner has an independent right to use or license
> the use of the copyright.

That proposition is also reaffirmed by such cases as Cortner v. Israel, 732 F.2d 267, 271 (2d Cir.

1984), which holds -- citing earlier caselaw -- that "[i]t is elementary that the lawful owner of a

copyright is incapable of infringing a copyright interest that is owned by him; nor can a joint

owner of a copyright sue his co-owner for infringement."[11] And the leading treatise in the field,

---

[9] Admittedly a bad pun, but one that's hard to resist given the nature of this lawsuit.

[10] Under the facts alleged in the Complaint, Shepherd and Weary were initially co-owners of the copyright in Grateful before Shepherd transferred her part of the co-ownership. Indeed, the words and music of a song are paradigmatic examples of interdependent components of a joint work, meaning that a lyricist and composer working together are generally the work's co-owners (see H.R.Rep. No. 1476, 94th Cong., 2d Sess. 120 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5736). Shepherd and Weary also listed themselves as co-authors as recently as their 2013 supplemental copyright registration -- and as Janky v. Lake County Convention and Visitors Bureau, 576 F.3d 356, 362 (7th Cir. 2009) teaches, artists' self-identification as co-authors in a copyright registration form further evidences the existence of a joint work.

[11] Shepherd and Weary contend that their status as beneficial owners should allow them to sue for infringement, even if this Court determines that Universal owns the copyright in Grateful. But the only case they cite for that proposition, Cortner, 732 F.2d at 271-72, makes clear that beneficial ownership does not confer the right to sue a co-owner or its licensee for infringement.

Melvin B. and David Nimmer, <u>Nimmer on Copyright</u> (1990) ("<u>Nimmer</u>") confirms that "an authorization to the defendant from one joint owner constitutes an effective defense to an infringement action brought by another joint owner" (1 <u>Nimmer</u> § 6.10[A][3][a]) and that a joint owner "may always transfer his interest in the joint work to a third party" (<u>Nimmer</u> § 6.11).[12]

Of course what has been said here applies only if (1) Shepherd did in fact transfer her rights to <u>Grateful</u> and (2) those rights included the authority to license <u>Grateful</u>'s use in rap music. This opinion therefore turns to those two central issues.

**Shepherd Transferred Her Copyright Ownership in <u>Grateful</u>**

Shepherd does not dispute the authenticity of her signature on the 1974 Agreement (see S.-W. Mem. 17-18). Instead she suggests that the 1974 Agreement expired before the creation of <u>Grateful</u>. It will be recalled that by its own terms the 1974 Agreement expired in March of 1975 unless ABC/Dunhill exercised the first of its four consecutive one-year renewal options. Those options in turn could be exercised by notifying Shepherd at least 30 days before the respective expiration dates (1974 Agreement ¶ 18).

Shepherd asserts that ABC/Dunhill never exercised those options and that the agreement therefore expired in 1975. On that score Shepherd's Complaint ¶ 49 states that any agreement Shepherd may have entered into "had expired, was not effective, and/or did not allow the Defendants to use her lyrics for rap." Elaborating on that point, defendants' responsive

_____

[12] <u>Nimmer</u> discusses at length a situation analogous to the one at issue here, in which one joint owner purports to convey an "exclusive" license to a third party, as Shepherd did to ABC/Dunhill (see <u>Nimmer</u> § 6.10[A][2]). In such a situation the initial grantor may not grant the same rights to any other party, but the other original co-owner may do so. Thus on the undisputed facts Shepherd could not grant her rights in <u>Grateful</u> to any other third party, but Weary could still license third parties to use the work. And as we shall see, Universal (and its licensees) would of course be protected from any copyright suit (see <u>id.</u>).

memorandum states that "Defendants presented no evidence of the mailing of the purported January 27, 1975 option renewal letter and no evidence of a signed receipt by Clara Shepherd of that mailing" (S.-W. Mem. at 17).

But that is no more than a red herring, for the 1974 Agreement required only the <u>mailing</u> of a renewal notice to Shepherd's address (1974 Agreement ¶ 13). No evidence of a signed receipt by Shepherd was required -- in fact the renewal notice was deemed sent at the moment that it was deposited in the mail (<u>id.</u>). And the certified mail receipts submitted by Universal provide ample evidence that renewal notices were indeed deposited in the mail, whether or not Shepherd ever received them. Those certified mail receipts are dated January 24, 1975 and January 12, 1976, well within the required time frames for extension (see U. Mem. Ex. F).[13]

Shepherd nonetheless argues that -- in the current procedural posture -- this Court must accept as true her allegation that any agreement "had expired, was not effective, and/or did not allow the Defendants to use her lyrics for rap" (S. Mem. 18, quoting ¶ 49). But of course this Court need not accept Shepherd's <u>legal</u> conclusion as true, particularly a conclusion such as this one that contradicts the plain language of the 1974 Agreement and the certified mail receipts. As <u>McCauley</u>, 671 F.3d at 616, teaches, courts need not accept "legal conclusions and conclusory allegations" as true. Merely asserting that the 1974 Agreement had expired by 1976 does not make it so, even on a motion to dismiss, and Shepherd has provided no reason to doubt the authenticity of the documents submitted by the defendants. This Court therefore finds that

---

[13] Shepherd takes pains to point out that the renewal notice letter was dated January 27, 1975 -- three days after the date listed on the receipt for certified mail. That fact could only appear relevant to someone who has never post-dated a letter by a few days, and it does not lead to any plausible inference that the receipt was somehow falsified.

the Composer's Agreement was in full force at the time that Shepherd and Weary composed

<u>Grateful</u>.[14]

### 1974 Agreement Granted Universal the Right To Use <u>Grateful</u> in Rap Music

But it is not enough to hold (as this opinion has done to this point) that even if the

Composer's Agreement remained in effect throughout 1976 and transferred some of Shepherd's

rights in <u>Grateful</u>.  It is still necessary to determine precisely which rights were transferred.  On

that score Shepherd and Weary unsurprisingly argue that those rights did not include the

authority to license <u>Grateful</u>'s use in creating and distributing <u>3 Kings</u>.

That line of argument, though, runs head-on into the text of the 1974 Agreement.  And

that Agreement's terms could not be more clear:  Shepherd was selling in its totality her interest

in the musical works created during the term of that Agreement (and <u>Grateful</u> was then created

during that term).  Shepherd thus transferred "each and every and all rights and interests of every

kind, nature and description in and to" the works to be created during the 1974 Agreement's term

(<u>id.</u> ¶ 3) -- and that encompasses <u>Grateful</u> (Ex. 3).  That phrase was not some artful obfuscation

designed to catch unsuspecting musicians unaware.  Instead it plainly conveyed that this was a

---

[14]   Shepherd and Weary also advance the incredible contention that the rights granted to
ABC/Dunhill expired at the end of one year.  While the 1974 Agreement does refer to the "term"
of that Agreement as being a single year, that refers to the length of time during which any
musical compositions embodying Shepherd's creative efforts during any one year term (whether
original or extended) would become subject to the Agreement.  So a song as to which Shepherd
was a "Writer" six years (for example) after the signing of the 1974 Agreement would fall
outside any "term," and hence no rights to that composition would transfer to ABC/Dunhill. By
contrast, the duration of the document's transfer of rights in any composition created during any
one-year original or extended term of the 1974 Agreement, such as <u>Grateful</u>, is clearly the
duration of the copyright:  ABC/Dunhill was granted rights "during the full term of all said
copyrights and all renewals and extensions thereof" (1974 Agreement ¶ 3).

contract of significant scope, and any ordinary reader of the English language would be on notice that the rights granted to ABC/Dunhill were extremely broad.

Among the rights specifically enumerated in 1974 Agreement ¶ 3 were ("without limiting the generality of the foregoing") the right to perform works such as <u>Grateful</u> over radio, television or any and all other means "now known or which may hereafter come into existence"; the right to "make any arrangement, adaptation … and transposition [of <u>Grateful</u>] in whole or in part, and in connection with any other musical . . . material"; and "any and all other rights of every and any nature."  And those rights were to be ABC/Dunhill's "sole and exclusive property as the sole owner thereof."

Shepherd's assertion that the vast panoply of rights granted to ABC/Dunhill did not include the right to license her work as part of a rap song cannot withstand scrutiny.  While the 1974 Agreement did not specifically list the possibility of sampling any of its subject matter -- here <u>Grateful</u> -- in a rap song -- no doubt because that agreement was drafted in 1974, that authority is surely included within the broad rights that Shepherd ceded.[15]

That same reasoning disposes of Shepherd's and Weary's objection to the use of <u>Grateful</u> in the specific context of "vulgar rap music."  On that issue they contend that the 1974 Agreement does not permit the use of <u>Grateful</u> in rap music because that use destroys the value of the song in gospel circles and frustrates the song's original purpose of being "spiritually

---

[15]  Shepherd contends that the 1974 Agreement is ambiguous as to whether it permits Universal to prepare derivative works.  But that is false:  Even without reference to the Agreement's explicit grant of the right to "make any . . . adaptation" of the work "in whole or in part, and in connection with any other musical . . . material," the 1974 Agreement's broad grant of "each and every and all rights" surely included the right to prepare derivative works.

uplifting" (S.-W. Mem. 20-21). They also contend that it would be "illogical" to believe that Universal could destroy "the integrity and longevity of the song in its original genre" (id.).

Once again that interpretation cannot be squared with the plain text of the 1974 Agreement, which makes no mention of being "spiritually uplifting" or of the gospel genre. While Shepherd and Weary may have written <u>Grateful</u> intending to create spiritually uplifting music and may have hoped that it would continue to be used only in the context of gospel music, those desires were not memorialized in the 1974 Agreement -- and of course there is no reason to believe that for-profit corporation ABC/Dunhill had similar motives. Instead the 1974 Agreement represented a commercial transaction and transferred Shepherd's rights in any musical work that would come within its scope -- hence <u>Grateful</u> -- without any limitation as to the purpose for which the music would be used or the genre in which it would be employed. Shepherd and Weary may be within their rights to take offense at the use to which their song has been put (and this Court certainly recognizes the legitimate unhappiness they feel at seeing their work used in conjunction with lyrics that bear no resemblance to gospel music), but they have no right to prevent Universal and the other defendants from using their song in the present manner.

Because Universal acted in accordance with the rights that Shepherd ceded to it in the 1974 Agreement, it cannot be held liable for infringement. And lest the careful reader think that this Court "forgot about Dre," neither Dr. Dre, Jay Z, Rick Ross nor any of the other defendants can be held liable for infringement, for they produced and performed <u>3 Kings</u> in accordance with licenses validly given by Universal. In sum, the infringement claim in Shepherd's and Weary's

Complaint must therefore be dismissed -- and with it, the prayer for attorneys' fees and statutory damages.[16]

### Shepherd and Weary Failed To Bring Suit within the Statute of Limitations

There is another independent -- and equally fatal -- bar to Shepherd's and Weary's recovery in this action. Even if they had been able to plead facts sufficient to support a plausible inference that they were the sole owners of Grateful (as they have not), they would still confront a separate insurmountable hurdle: This lawsuit was filed long after the three-year limitations period for copyright ownership claims had expired (see Section 507(b)). They seek to escape that result by contending (1) that the sine qua non of their Complaint is copyright infringement rather than the threshold issue of copyright ownership (so that the three year limitations period for ownership claims is somehow irrelevant) and (2) that they lacked notice of Universal's claim.

That first contention is belied by the plain terms of Shepherd's and Weary's Complaint, which discloses that the gravamen of their factual claim is clearly copyright ownership. Although the Complaint concedes that "Counsel for Defendants . . . has represented that a copyright was recorded with the United States Copyright Office in 1976" (¶ 20), it then goes on

---

[16] Defendants also argue that the Complaint should be dismissed for the independent reason that plaintiffs have once again failed to comply with the registration requirement of Section 411(a) -- they claim that the registration is defective because it has been filed with the Copyright Office but not yet acted upon. Our Court of Appeals (in two opinions authored by Judge Posner) has expressed seemingly conflicting views as to whether mere filing is sufficient: Gaiman v. McFarlane, 360 F.3d 644, 655 (7th Cir. 2004) states that "an application to register must be filed, and either granted or refused, before suit can be brought," while Chicago Bd. of Educ. v. Substance, Inc., 354 F.3d 624, 631 (7th Cir. 2003) (citing Nimmer) had earlier said that "[a]lthough a copyright no longer need be registered with the Copyright Office to be valid, an application for registration must be filed before the copyright can be sued upon." Because Gaiman is the later-decided case, this Court would be inclined to follow its teaching -- but because the Complaint so clearly fails to state a claim for the reasons already discussed, it is unnecessary to resolve the apparent divergence between Gaiman and Chicago Bd. of Educ. by ruling on plaintiffs' satisfaction of Section 411(a).

to assert that "Plaintiffs have been the sole proprietor of all rights, title and interest in and to the copyright" (¶ 23). Those two paragraphs, together with the extensive briefing on the present motion, demonstrate that the central issue is not one of infringement but of ownership. Shepherd and Weary filed this lawsuit knowing that Universal claimed ownership of Grateful -- indeed, they filed suit knowing that Universal's predecessor had previously registered a copyright in Grateful. If Universal owns or co-owns the copyright, Universal prevails, while if it does not, Shepherd and Weary are likely to prevail.

Shepherd and Weary cannot circumvent the statute of limitations by simply refusing to acknowledge the legitimacy of Universal's copyright ownership claim -- if they could do so, Congress' decision to impose a three year statute of limitations would be easily circumvented by artful pleading. As Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H., 510 F.3d 77, 85 (1st Cir. 2007) (statutory citation omitted) has made clear when faced with a similar attempt to recast a copyright ownership claim as one of infringement:

> Cambridge's complaint does not request a declaration of its co-ownership of the United States copyright in Das Hummel-Buch. It both asserts ownership and acknowledges that Cambridge's ownership is in controversy. The omission does not remove the predicate question of ownership from the case, and whether Cambridge has any ownership interest is in dispute, even on the face of the complaint.
>
> *          *          *
>
> Here the necessary initial question -- ownership of copyright interests -- is governed by the Copyright Act. Because that question is governed by the Act, the Act's statute of limitations applies as well. It would be anomalous and, we think, contrary to congressional language and intent not to apply the Act's limitations period when the Act governs the question of ownership interest.

Similarly instructive is <u>Kwan v. Schlein</u>, 634 F.3d 224, 229, 230 (2d Cir. 2011) (citation and internal quotation marks omitted), which held that a purported infringement claim was in fact a time-barred claim of ownership:

> [T]he dispute over [the work] does not involve the nature, extent or scope, of copying, and therefore, ownership forms the backbone of the "infringement" claim at issue here.
>
> \*　　　\*　　　\*
>
> [w]here, as here, a plaintiff's copyright ownership is not conceded (and, in fact, the defendant holds a prior copyright registration certificate for the disputed work), copyright ownership, and not infringement, is the gravamen of the plaintiff's claim to which the statute of limitations is applied.

As in <u>Kwan</u> and <u>Cambridge Literary Properties</u>, this case poses the threshold question whether plaintiffs are the sole owners of the copyright -- and the answer to that question, rather than the scope or nature of any infringement, is what is truly at issue in this action. Section 507(b)'s three-year statute of limitations therefore controls and began to run when Shepherd and Weary had notice of ABC/Dunhill's ownership claim.

Next Weary argues that he lacked notice of ABC/Dunhill's claim in 1976, so that the limitations clock did not begin to tick until the release of <u>3 Kings</u>. But that argument runs head-on into Section 205(c), which states that registration of a copyright "gives all persons constructive notice of the facts stated in the recorded document," so long as "the document, or material attached to it, specifically identifies the work to which it pertains so that, after the document is indexed by the Register of Copyrights, it would be revealed by a reasonable search under the title or registration number of the work." And of course ABC/Dunhill registered a copyright in the song titled <u>I'm So Grateful (Keep in Touch),</u> listing Shepherd and "James Weary" as authors and itself as owner, in 1976 (see U. Mem. Ex. H). Under Section 205(c),

then, Weary and Shepherd had notice of Universal's ownership claim in 1976 but did not file suit until 2013, decades after the expiration of the limitations period.

Weary presents three contentions as to why Section 205(c)'s constructive notice provision should not apply. None survives analytical scrutiny.

First Weary says that the issue of notice is fact-intensive and there is "no way any court could conclude on a motion to dismiss whether a 'reasonable search' could have revealed this registration" (S.-W. Mem. 22). That is simply false. Any search for a song titled "I'm So Grateful" would have revealed ABC/Dunhill's registration. And Section 205(c) states only that such a registration must be revealed "by a reasonable search under the title . . . of the work." This case falls squarely within the heart of that statute's text.

Weary next urges that, because his name is listed as "James Weary" on the registration rather than "Jimmy Lee Weary," he could not have suspected that the "I'm So Grateful" registered to ABC/Dunhill was the same song that he had composed. But Section 205(c) says nothing about the name of the author (rather than the name of the work) on a copyright registration. And it beggars belief that Weary, confronted with a copyright registration listing the full title of his work and the name "James Weary" (as well as the correct name of his co-author) would have had no idea that the song referred to was his own.[17]

Finally Weary argues that because the copyright registration did not indicate that ABC/Dunhill owned the copyright in <u>Grateful</u> "to the exclusion of Shepherd and Weary," those plaintiffs had no reason to take defensive action and the statute of limitations did not begin to run. Of course that contention ignores the very nature of copyright registration. When an entity

_____

[17] Come now -- are we really expected to believe in the tooth fairy?

files a copyright registration and lists only its own name as an owner (as ABC/Dunhill did here), that serves as notice to the world that it considers itself the sole owner thereof. Indeed, the relevant regulation (37 C.F.R. 202.3(a)(3)) says as much: a copyright claimant who is not an author must be "A person or organization that has obtained ownership of all rights under the copyright initially belonging to the author."

In sum, Weary and Shepherd had constructive notice of ABC/Dunhill's ownership claim as early as 1976, when ABC/Dunhill registered its copyright. As the preceding section of this opinion makes clear, Shepherd and Weary cannot sue Universal for infringement without first prevailing on the contested issue of ownership. But neither of them brought suit to contest ownership until 2013, more than 30 years after the applicable statute of limitations had run. For that reason too, plaintiffs' "infringement" claim must be dismissed.

### Plaintiffs' Supplemental Jurisdiction Claims Need Not Be Explored

That leaves only the Complaint's supplemental jurisdiction claims premised on state law. Though defendants raise a number of defenses to those claims, that effort is unnecessary under the circumstances: This Court declines to consider those supplemental claims following the dismissal of the sole federal claim at issue (see 28 U.S.C. § 1367(c)(3)).

Complaint ¶ 7 makes it clear that subject matter jurisdiction over the state law claims is based upon "principles of pendent and ancillary jurisdiction." And the last-cited statute codifies the principle, announced nearly a half century ago in United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966), that such supplemental and jurisdiction claims may be dismissed without prejudice when all federal claims are dispatched before trial (accord, a host of cases such as Pugel v. Bd. of Trs. of the Univ. of Ill., 378 F.3d 659, 669 (7th Cir. 2004)). This Court so orders.

- 19 -

**Conclusion**

Shepherd's and Weary's federal copyright claim is dismissed with prejudice, while their supplemental jurisdiction claims grounded in state law are dismissed without prejudice. Hence, as stated at the outset of this opinion, both the Complaint and this action are dismissed -- a final judgment in the case.[18]

_____

Milton I. Shadur
Senior United States District Judge

Date: August 5, 2014

_____

[18] Jay Z, Dr. Dre, Universal and the other defendants may therefore rest assured that while they may well have "99 Problems" (see n.1), the current Complaint and action are no longer among them.